*35 CHIEF JUSTICE TURNAGE
concurring in part and dissenting in part:
I concur with the majority opinion as to Issues I and II. However, I respectfully dissent as to Issue III, concerning the affirmative defense of equitable estoppel, and Issue IV, concerning the right to jury trial.
Section 28-2-904, MCA, provides that a contract in writing supersedes all oral negotiations or stipulations concerning its subj ect which preceded or accompanied execution of the written contract. Section 28-2-905, MCA, sets forth the circumstances under which extrinsic evidence concerning a written agreement may be considered. The portion claimed to be applicable in this case is subsection (2), evidence to establish fraud.
The District Court ruled, as a matter of law (and the issue was not appealed), that there was not enough evidence to support a claim of fraud on the part of FCB. The majority opinion states that “[t]he elements of fraud are substantially the same as the elements of equitable estoppel.” If, as the majority states, the elements of fraud are substantially the same as the elements of equitable estoppel, what is the effect of the District Court’s ruling as to the claim of fraud on the “substantially the same” claim of equitable estoppel?
Beyond that, a claim of equitable estoppel cannot be based upon a promise to do or not do a future act. Christian v. A.A. Oil Corp. (1973), 161 Mont. 420, 431, 506 P.2d 1369, 1375. Here, the alleged oral promises were not to foreclose on the “Home Place” in any future foreclosure action, and to continue providing operating loans for at least five years. As promises to do or not do future acts, neither is available as a basis for a claim of equitable estoppel. The majority opinion does not address this.
Further, Attorney Lester Loble, a twenty-year partner in the Helena, Montana, firm of Loble and Pauly, P.C., and its predecessors, stated by deposition that he explored various sources of financing with Clifford Graveley prior to the Graveleys’ purchase of the Snowshoe Ranch. He acted as the Graveleys’ attorney in connection with the FCB loan, and was present when the FCB loan agreement was signed. He did not recall suggesting any changes to the loan document to Valarie Warehime, and, to the best of his recollection, no changes were made. At his deposition, he was asked:
Q. Do you recall any discussion by Valarie Warehime regarding [FCB] taking the collateral back and releasing Graveleys from an *36 obligation to. pay any more at the loan closing? Any discussion at the loan closing?
A. There was no such discussion at the loan closing.
Q. Were there discussions at that time before the loan closing?
A. About a deed in lieu of foreclosure?
Q. About deeds in lieu of foreclosure.
A. None whatsoever.
Q: Were there any discussions between you and your clients relative to prótéctiori of the home ranch in the event of possible default?
A. ... The answer to that question is no.
Loble testified that only after the Graveleys were unable to meet their 1985 payment did he discuss with Valarie Warehime the subject of deeds in lieu of foreclosure on the Graveley loan.
There can be no misrepresentation if the party relying on the representation had the means to investigate its truth. Aetna Life Ins. Co. v. McElvain (1986), 221 Mont. 138, 148, 717 P.2d 1081, 1087. The Graveleys, and their attorney, clearly had the means to fully review the loan documents and their obligations thereunder before signing them. In addition, their attorney had both the duty and the opportunity to advise the Graveleys on these matters' before they signed the loan agreement with FCB.
Hard cases make bád law. In its eagerness to come to the aid of the Graveleys, the Court here opens a wide door to variation of the terms of written contracts by alleged-oral agreements. For all of the above reasons, I would grant summary" judgment to Farm Credit Bank on Issue III, disallowing the equitablé estoppel defense.
I also disagree with the majority’s discüssion under and resolution of Issue IV, Right tó Jury Trial. The opinion states that “where there áre mixed legal and equitable issues ... then they aré entitled to trial byjury.”
The holding of the case cited, Gray v. City of Billings (1984), 213 Mont. 6, 689 P.2d 268, was that; where equitable and legal claims are joined in the same action; there is a right to ]ury trial on the legal claims. The Court noted that the rules permit severance of claims and issues.
The majority opinion implies that where there are both legal and equitable claims, jury trial must be allowed-on all claims. This was not the holding of Gray.
*37 The question of whether juries, should be allowed to decide cases both at law and in equity was specifically considered and rejected at the 1972 Montana Constitutional Convention. See Con. Con. Tr., Vol. V, pp. 1788-1792. Delegate Holland moved that Article II, Section 26 of the Montana Constitution be amended to provide that “[t]he right of trial by jury shall, in all cases in law and equity, be secured to all.” Discussion ensued, in which delegates opposed to the proposed amendment pointed out the historical common law distinction between cases tried at equity and those tried at law.: Following the discussion, Delegate Holland’s proposed amendment was rejected. The Constitution retains the wording which was described as upholding the common law rule that there is no right to trial by jury in cases at equity.
The Montana Rules of Civil Procedure are designed to accommodate an action involving both issues triable to a jury and issues on which a jury trial is not permitted. Rule 38(b), M.R.Civ.P, speaks of demand for trial by jury “of any issue triable of right by a jury.” Under Rule 42(b), M.R.Civ.P, a court may order, bifurcation of trials on several issues or claims, “in furtherance of convenience or to avoid prejudice.” I believe that type of procedure would be appropriate in this case. It would also be appropriate to use the provision of Rule 39(c), M.R.Civ.P, allowing a judge to empanel an advisory jury in matters not triable by jury.
In summary, the majority opinion on Issue III unnecessarily and without statutory authority or credible precedent has rendered the parol evidence rule, §§ 28-2-904 and -905, MCA, meaningless as a practical matter. In doing so, a cloud of confusion is now cast over our prior, decisions interpreting and,applying these statutory provisions. However, to fully appreciate the mischief created by the majority opinion, it is absolutely necessary to understand the interrelationship of Issues III. and IV.,
Having erroneously provided for an equitable issue of fact under Issue III, the majority opinion then concludes in Issue IV that there now exist “mixed issues” of equity and law, thereby entitling the Graveleys to a jury trial on both the equity and law issues. I am certain that the bench, bar, and the people of Montana will be startled to learn that the unambiguous language of a written contract, entered into by the Graveleys who were represented by competent attorneys, may be thus thrown into question by an alleged oral statement preceding the signing of the contract.
JUSTICE WEBER joins in the dissent of CHIEF JUSTICE TURNAGE as to Issues III and IV.